## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

PANHANDLE EASTERN PIPE LINE
COMPANY, LP,

              *Petitioner*,

   v.

FEDERAL ENERGY REGULATORY
COMMISSION,

              *Respondent*.

No. 25-1127

## PETITION FOR REVIEW

Pursuant to Section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), Rule 15(a) of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 15, Panhandle Eastern Pipe Line Company, LP ("Panhandle") petitions for review of the following order issued by the Federal Energy Regulatory Commission ("Commission"), Respondent:

> 1. Order on Rehearing and Clarification, *Panhandle Eastern Pipe Line Company, LP*, 191 FERC ¶ 61,013 (April 4, 2025) (FERC Docket No. RP19-78-016).

A copy of the order is attached to this filing as Attachment A. In a previous December 5, 2024 order ("Second Refund Report Order"), the Commission rejected Panhandle's revised refund report related to the Opinion No. 885 rates and directed Panhandle to file a revised refund report and issue additional refunds. In a February

1

3, 2025 notice, the Commission indicated that Panhandle's January 3, 2025 request for rehearing of the Commission's December 5, 2024 order may be deemed to have been denied. Panhandle separately filed a petition for review of those orders in this Circuit, docketed as Case No. 25-1103. On April 4, 2025, as permitted by section 19(a) of the Natural Gas Act, 15 U.S.C. § 717r(a), the Commission issued an order on rehearing and clarification, which modified the discussion in its Second Refund Report Order but did not change the outcome of that Order. Panhandle is thus aggrieved by the Commission's actions therein and entitled to seek review before this Court.

Panhandle's appeal of the Commission's first set of orders on Opinion No. 885 refunds is Case No. 24-1301. The Commission's associated Opinion Nos. 885, 885-A and 885-B are on appeal to this Court in Case Nos. 20-1419, *et al.* (consolidated). On April 24, 2025, Panhandle separately moved to consolidate Case No. 25-1103 with Case No. 24-1301 and Cases No. 20-1419 *et al*. *See* Unopposed Mot. to Consolidate and Apply Abeyance (Doc. #2112643), No. 20-1419. Given that all of the cases arise from the same Commission proceeding, Panhandle respectfully suggests that the Court consolidate this proceeding with those cases and apply the abeyance previously granted in Case No. 20-1419 to all the consolidated cases.

Respectfully submitted,

PANHANDLE EASTERN
PIPE LINE COMPANY, LP

*/s/ Thomas E. Knight*
Thomas E. Knight
Steve Stojic
Matthew X. Etchemendy
Adam Kleven
Vinson & Elkins, LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6524
Facsimile: (202) 879-8914
tknight@velaw.com
sstojic@velaw.com
metchemendy@velaw.com
akleven@velaw.com

*Counsel for Petitioner*

Dated:     May 16, 2025
           Washington, DC

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

PANHANDLE EASTERN PIPE LINE
COMPANY, LP,

*Petitioner*,

v.

FEDERAL ENERGY REGULATORY
COMMISSION,

*Respondent*.

No. 25-1127

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Panhandle Eastern Pipe Line Company, LP makes the following disclosures:

1. Panhandle Eastern Pipe Line Company, LP ("Panhandle") is a limited partnership organized and existing under the laws of the state of Delaware and has its principal place of business at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225. Panhandle is a natural gas company that is primarily engaged in the business of transporting natural gas in interstate commerce under authorizations granted by and subject to the jurisdiction of the Federal Energy Regulatory Commission.

2. Southern Union Panhandle LLC, an indirect wholly-owned subsidiary of Energy Transfer LP, owns a 1% general partner interest in Panhandle. Energy Transfer Interstate Holdings, LLC, an indirect wholly-owned subsidiary of Energy Transfer LP, owns a 99% limited partnership interest in Panhandle and a 100% membership interest in Southern Union Panhandle LLC. Energy Transfer LP is a publicly traded master limited partnership (NYSE: ET).

Respectfully submitted,

PANHANDLE EASTERN
PIPE LINE COMPANY, LP

*/s/ Thomas E. Knight*
Thomas E. Knight
Steve Stojic
Matthew X. Etchemendy
Adam Kleven
Vinson & Elkins, LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6524
Facsimile: (202) 879-8914
tknight@velaw.com
sstojic@velaw.com
metchemendy@velaw.com
akleven@velaw.com

*Counsel for Petitioner*

Dated:     May 16, 2025
           Washington, DC

# CERTIFICATE OF SERVICE

I certify that on May 16, 2025, I served a copy of the foregoing document in accordance with the Federal Rules of Appellate Procedure and the Circuit Rules, by U.S. Mail, upon the Solicitor of the Federal Energy Regulatory Commission, 888 First Street NE, Washington, DC 20426, and the Secretary of the Federal Energy Regulatory Commission, 888 First Street NE, Washington, DC 20426, and by U.S. Mail to the parties listed below.

Pursuant to 18 C.F.R. § 385.2012, I will also provide a date-stamped copy of the foregoing documents to the Office of the Secretary of the Federal Energy Regulatory Commission once a date-stamped copy is available.

Dated: May 16, 2025

Respectfully submitted,

*/s/ Thomas E. Knight*
Thomas E. Knight
Vinson & Elkins LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6524
Facsimile: (202) 879-8914
tknight@velaw.com

*Counsel for Petitioner*

| Party | Served On |
|---|---|
| Ameren Corporation | Regina Y. Speed-Bost<br>6500 Chew Road<br>Upper Marlboro, MD 20772 |
| Ameren Illinois Company | David B. Hennen<br>Ameren Services Company<br>1901 Chouteau Avenue, MC 1310<br>St. Louis, Missouri 63103<br><br>Vonda Seckler<br>Ameren Illinois Company<br>PO Box 66149<br>Saint Louis, Missouri 63166<br><br>Jamie Simler<br>Ameren Services Company<br>1331 Pennsylvania Avenue, NW<br>Washington, DC 20004 |
| Ameren Services Company | Regina Y. Speed-Bost<br>6500 Chew Road<br>Upper Marlboro, MD 20772<br><br>Ashley Dixon<br>Ameren Services Company<br>1901 Chouteau Avenue<br>St. Louis, MO 63103 |
| American Forest & Paper Association | Andrea Chambers<br>DLA Piper<br>500 8th Street NW<br>Washington, DC 20004<br><br>Jonathan Wright<br>Covington & Burling LLP<br>One City Center<br>850 Tenth Street, NW<br>Washington, DC 20001 |

| Party | Served On |
|---|---|
| Anadarko Energy Services Company | Chris Barnett<br>Anadarko Energy Services Company<br>1200 Timberloch Place<br>The Woodlands, Texas 77380 |
| Archer Daniels Midland Company | Kelly Daly<br>Snell & Wilmer<br>400 East Van Buren Street, Suite 1900<br>Phoenix, AZ 85004 |
| Atmos Energy Corporation | James Jeffries<br>McGuireWoods, LLP<br>201 North Tryon Street, Suite 3000<br>Charlotte, North Carolina 28202<br><br>Kevin C. Frank<br>Atmos Energy Corporation<br>5430 LBJ Fwy., Suite 1800<br>1800 Three Lincoln Centre<br>Dallas, TX 75240 |
| Black Hills Service Company, LLC | Dari Dornan<br>Black Hills Energy<br>1102 E. 1st Street<br>Papillion, Nebraska 68046<br><br>Christina L. Menning<br>Black Hills Utility Holdings, Inc.<br>1731 Windhoek Drive<br>Lincoln, NE 68512 |
| Black Hills Utility Holdings, Inc. | Dari Dornan<br>Black Hills Energy<br>1102 E. 1st Street<br>Papillion, Nebraska 68046<br><br>Christina Ellis<br>Black Hills Utility Holdings, Inc.<br>1731 Windhoek Drive<br>Lincoln, NE 68512 |

| Party | Served On |
| --- | --- |
| Board of Directors for Utilities of the Department of Public Utilities of the City of Indianapolis d/b/a Citizens Energy Group | James Byrd<br>McCarter & English, LLP<br>1301 K Street N.W., Suite 1000 West<br>Washington, DC 20005<br><br>Michael Allen<br>Citizens Energy Group<br>2020 N. Meridian Street<br>Indianapolis, IN 46202 |
| BP Canada Energy Marketing Corp. | Christopher Heywood<br>BP Energy<br>201 Helios Way<br>Houston, TX 77079<br><br>Rose Mary Vandergrift<br>BP Energy<br>240 4th Ave. SW<br>Calgary, Alberta, CA T2P 2H8<br><br>Betsy Carr<br>BP Energy<br>201 Helios Way<br>Houston, TX 77079 |

| Party | Served On |
|---|---|
| CenterPoint Energy Resources Corp. | Debra Ann Palmer<br>Reed Smith<br>1301 K Street, NW<br>Washington, DC 20005<br><br>Patrick H. Peters, III<br>CenterPoint Energy<br>1005 Congress Avenue, Suite 650<br>Austin, TX 78701<br><br>Darrell Williams<br>CenterPoint Energy<br>111 Louisiana Street, #1951<br>Houston, TX 77002<br><br>Yi Huang<br>CenterPoint Energy<br>111 Louisiana Street, B-241<br>Houston, TX 77002<br><br>Jeff Perryman<br>CenterPoint Energy<br>111 Louisiana Street<br>Houston, TX 77002 |
| Chevron Natural Gas | Myra McAbee<br>Chevron USA Inc.<br>1400 Smith Street, Room 06006<br>Houston, TX 77002<br><br>Charles R. Cook<br>Chevron USA Inc.<br>1500 Louisiana Street, 3rd Floor<br>Houston, Texas 77002 |

| Party | Served On |
|---|---|
| Columbia Gas of Ohio, Inc. | Kenneth Christman<br>NiSource Corporate Services<br>501 Technology Drive<br>Canonsburg, PA 15317<br><br>M. Bryan Little<br>150 West Market Street, Suite 600<br>Indianapolis, Indiana 46204 |
| Columbia Gas of Pennsylvania, Inc. | M. Bryan Little<br>150 West Market Street, Suite 600<br>Indianapolis, Indiana 46204 |
| Concord Energy LLC | Gordon Smith<br>John & Hengerer<br>1629 K Street NW, Suite 402<br>Washington, DC 20006<br><br>Stephen T. Tsai<br>Concord Energy LLC<br>1401 17th Street, Suite 1500<br>Denver, Colorado 80202<br><br>Douglas Fernley<br>Concord Energy<br>1401 17th Street, Suite 1500<br>Denver, Colorado 80202 |
| Constellation Energy Generation, LLC | Carrie Allen<br>Constellation Energy Corp.<br>101 Constitution Avenue, NW, Suite 400 East<br>Washington, DC 20001<br><br>Christopher Wilson<br>Constellation Energy Generation, LLC<br>101 Constitution Avenue, NW, Suite 400 East<br>Washington, DC 20001 |

| Party | Served On |
|---|---|
| Consumers Energy Company | Rachel H. Moore<br>Legal Department<br>Consumers Energy Company<br>One Energy Plaza<br>Jackson, MI 49201<br><br>Deborah Moss<br>Consumers Energy Company<br>1730 Rhode Island Ave., N.W., Suite 1007<br>Washington, DC 20036 |
| DCP Midstream, LP | Stephen Van Hooser<br>DCP Midstream, LLC<br>370 17th Street, Suite 2500<br>Denver, CO 80202<br><br>Tyler Culbertson<br>DCP Midstream, LP<br>6900 E. Layton Avenue, Suite 900<br>Denver, CO 80237<br><br>Deena Jordan<br>DCP Midstream, LLC<br>370 17th Street, Suite 2500<br>Denver, CO 80202<br><br>Charles Couch<br>DCP Midstream, LP<br>6900 E. Layton Avenue, Suite 900<br>Denver, CO 80237 |

| Party | Served On |
|---|---|
| Direct Energy Business Marketing, LLC | Mark Haskell<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Brett Snyder<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Lamiya Rahman<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Michael Kaufman<br>Direct Energy Business Marketing LLC<br>1825 K Street, NW, Suite 1203<br>Washington, DC 20006 |
| DTE Gas Company | Leah Chamberlin<br>DTE Gas Company<br>One Energy Plaza, 688 WCB<br>Detroit, Michigan 48226<br><br>Timothy Krysinski<br>DTE Gas Company<br>One Energy Plaza<br>Detroit, Michigan 48226<br><br>Lauren D. Donofrio<br>215 S. Cascade St.<br>Fergus Falls, MN 56537 |

| Party | Served On |
|-------|-----------|
| DTE Energy Trading, Inc. | Cynthia Klots<br>414 S. Main Street, Suite 200<br>Ann Arbor, MI 48104<br><br>Timothy Krysinski<br>DTE Energy Company<br>One Energy Plaza<br>Detroit, MI 48226 |
| Duke Energy Carolinas, LLC | James Jeffries<br>McGuireWoods, LLP<br>201 North Tryon Street, Suite 3000<br>Charlotte, North Carolina 28202 |
| Duke Energy Indiana, LLC | James Jeffries<br>McGuireWoods, LLP<br>201 North Tryon Street, Suite 3000<br>Charlotte, North Carolina 28202<br><br>Jim J. McClay, III<br>Duke Energy<br>525 S. Tryon Street<br>Charlotte, NC 28202 |
| EQT Energy, LLC | Gordon Smith<br>John & Hengerer<br>1629 K Street NW, Suite 402<br>Washington, DC 20006<br><br>Jay Alter<br>EQT Energy, LLC<br>625 Liberty Avenue<br>Pittsburgh, PA 15222 |

| Party | Served On |
|---|---|
| Exelon Corporation | Susan Bergles<br>Constellation Energy Generation, LLC<br>1310 Point Street - 8th Floor<br>Baltimore, Maryland 21231<br><br>Christopher A. Wilson<br>Constellation Energy Generation, LLC<br>101 Constitution Ave, NW, Suite 400E<br>Washington, DC 20001<br><br>Lisa Simpkins<br>Exelon Corporation<br>1310 Point Street, No. 9NW21<br>Baltimore, MD 21231 |
| Federal Energy Regulatory Commission | Lance Escher<br>Commission Staff Counsel<br>888 First Street NE, AL-2.2<br>WDC 32-09<br>Washington, DC 20426 |
| Indiana Gas Company, Inc. d/b/a Vectren Energy Delivery of Indiana, Inc. | Heather Watts<br>CenterPoint Energy<br>211 N.W. Riverside Drive<br>Evansville, Indiana 47708<br><br>Emon Mahoney<br>CenterPoint Energy<br>1400 Centerview Drive, Suite 100<br>Little Rock, AR 72211 |
| Interstate Gas Supply, Inc. | Gordon Smith<br>John & Hengerer<br>1629 K Street NW, Suite 402<br>Washington, DC 20006<br><br>Joseph Oliker<br>Interstate Gas Supply, Inc.<br>6100 Emerald Parkway<br>Dublin, Ohio 43016 |

| Party | Served On |
| --- | --- |
| Kansas Gas Service, A Division of ONE Gas, Inc. | Judy Y. Jenkins Hitchye<br>Kansas Gas Service, A Division of ONE Gas, Inc.<br>7421 W. 129th Street<br>Overland Park, Kansas 66213<br><br>Janet Buchanan<br>Kansas Gas Service, A Division of ONE Gas, Inc.<br>7421 W. 129th Street<br>Overland Park, Kansas 66213<br><br>Kelly A. Daly<br>Snell & Wilmer<br>400 East Van Buren Street, Suite 1900<br>Phoenix, Arizona 85004<br><br>Farris J. Gillman<br>Pinnacle West Capital Corporation<br>400 N 5th ST<br>Mail Station 8695<br>Phoenix, AZ 85004 |
| Koch Energy Services, LLC | Claire Burum<br>20 Greenway Plaza, Suite 800<br>Houston, TX 77046<br><br>John Wingate<br>Koch Companies Public Sector, LLC<br>4111 E. 37th Street N<br>Wichita, KS 67220 |

| Party | Served On |
|---|---|
| Macquarie Energy LLC | Michael Yuffee<br>Winston Strawn<br>1700 K Street, NW<br>Washington, DC 20006<br><br>Ryan Norfolk<br>Baker Botts<br>700 K Street, NW<br>Washington, DC 20001<br><br>Kevin J. Pooler<br>Macquarie Energy LLC<br>500 Dallas Street, Suite 3300<br>Houston, Texas 77002 |
| Michigan Gas Utilities | Conor Ward<br>WEC Energy Group, Inc.<br>231 W. Michigan Street, A292<br>Milwaukee, Wisconsin 53203<br><br>BA Martin<br>WEC Energy Group, Inc.<br>231 W. Michigan Street<br>Milwaukee, Wisconsin 53203 |

| Party | Served On |
|---|---|
| Michigan Public Service Commission | David D'Alessandro<br>1775 Pennsylvania Avenue, NW, Suite 800<br>Washington, DC 20006<br><br>Jonathan P. Trotta<br>Davis Wright Tremaine LLP<br>1301 K Street NW, Suite 500 East<br>Washington, DC 20005<br><br>Marie Denyse Zosa<br>Stinson LLP<br>1775 Pennsylvania Avenue, NW, Suite 800<br>Washington, DC 20006<br><br>Spencer A Sattler<br>Michigan Attorney General<br>7109 W. Saginaw Hwy., 3rd Floor<br>Lansing, Michigan 48917 |
| MIECO Inc. | Gordon Smith<br>John & Hengerer<br>1629 K Street NW, Suite 402<br>Washington, DC 20006 |

| Party | Served On |
|---|---|
| Missouri Public Service Commission | John D. Borgmeyer<br>Missouri Public Service Commission<br>200 Madison Street, PO Box 360<br>Jefferson City, Missouri 65102<br><br>Rodney P. Massman<br>Missouri Public Service Commission<br>200 Madison Street, PO Box 360<br>Jefferson City, Missouri 65102<br><br>Shelley S. Brueggemann<br>Missouri Public Service Commission<br>200 Madison Street, PO Box 360<br>Jefferson City, Missouri 65102<br><br>Janis Fischer<br>Missouri Public Service Commission<br>200 Madison Street, PO Box 360<br>Jefferson City, Missouri 65102<br><br>Valerie Groose<br>Missouri Public Service Commission<br>200 Madison Street, PO Box 360<br>Jefferson City, Missouri 65102<br><br>Jennie Wells<br>Missouri Public Service Commission<br>200 Madison Street, PO Box 360<br>Jefferson City, Missouri 65102<br><br>Stephen Pearson<br>Spiegel & McDiarmid LLP<br>1818 N Street NW, 8th Floor<br>Washington, DC 20036 |

| Party | Served On |
|---|---|
| Montpelier Generating Station LLC | John Floom<br>Floom Energy Law PLLC<br>3100 Clarendon Blvd. Suite 920<br>P.O. Box 50606<br>Arlington, VA 22201<br><br>Carla Banks<br>Rockland Capital, LLC<br>24 Waterway Ave., Suite 800<br>The Woodlands, Texas 77380 |
| Municipal Gas Commission of Missouri | Douglas Healy<br>3010 E. Battlefield Street, Ste A<br>Springfield, MO 65804<br><br>Stephen Pearson<br>Spiegel & McDiarmid LLP<br>1818 N Street NW, 8th Floor<br>Washington, DC 20036 |
| NJR Energy Services Company | William Scharfenberg<br>NJR Service Corporation<br>PO Box 1415<br>Wall, New Jersey 07719 |
| Northern Illinois Gas d/b/a Nicor Gas Company | Elizabeth Wade<br>AGL Services Company<br>10 Peachtree Place NE, Suite 1000<br>Atlanta, GA 30309 |
| Northern Indiana Public Service Company LLC | M. Bryan Little<br>NiSource Corporate Services<br>150 West Market Street, Suite 600<br>Indianapolis, Indiana 46204<br><br>Debra McCall<br>NiSource Corporate Services<br>150 West Market Street, Suite 600<br>Indianapolis, Indiana 46204 |

| Party | Served On |
|---|---|
| NRG Business Marketing LLC | Jennifer Hsia<br>NRG Business Marketing LLC<br>804 Carnegie Center Drive<br>Princeton, NJ 08540<br><br>Kevin Frank<br>NRG Business Marketing LLC<br>804 Carnegie Center Drive<br>Princeton, NJ 08540 |
| Nucor Steel – Crawfordsville | Damon Xenopoulos<br>Stone Mattheis Xenopoulos & Brew, PC<br>1025 Thomas Jefferson Street NW<br>Washington, DC 20007 |

| Party | Served On |
|---|---|
| Panhandle Municipal Defense Group<br><br>(Village of Franklin, IL; City of Fulton, MO; City of Pittsfield, IL; Village of Pleasant Hill, IL; Village of Riverton, IL; City of Roodhouse, IL; Village of Rossville, IL; Village of Waverly, IL; City of Auburn, IL; Town of Bainbridge, IN; Village of Divernon, IL; City of Hermann, MO; Town of Lapel, IN; City of Macon, MO; Montgomery City, MO; Village of Morton, IL; Village of Pawnee, IL; Town of Pittsboro, IN; Town of Roachdale, IN; City of White Hall, IL; City of Bushnell, IL; and City of Winchester, IL) | Joseph Fagan<br>Day Pitney LLP<br>555 11th St NW<br>Suite 403<br>Washington, 20004<br><br>Sophia Browning<br>Day Pitney LLP<br>555 11th St NW<br>Washington, 20004 |
| PCS Nitrogen Fertilizer, L.P. | Joel Greene<br>Duncan Weinberg Genzer Pembroke<br>1667 K Street NW, Suite 700<br>Washington, DC 20006<br><br>Andrea Sarmentero Garzon<br>Duncan Weinberg Genzer Pembroke<br>1655 Fort Meyer Drive, Office 759<br>Arlington, VA 22209 |

| Party | Served On |
|---|---|
| POET Ethanol Products | Rob Anderson<br>POET Ethanol Products<br>3939 N Webb Road<br>Wichita, KS 67226<br><br>Kelly Daly<br>Snell & Wilmer<br>400 East Van Buren Street, Suite 1900<br>Phoenix, AZ 85004 |
| Process Gas Consumers Group | Andrea Chambers<br>DLA Piper<br>500 8th Street NW<br>Washington, DC 20004<br><br>Jonathan Wright<br>Covington & Burling<br>One City Center<br>850 Tenth Street NW<br>Washington, DC 20001 |
| Range Resources-Appalachia LLC | John Floom<br>Floom Energy Law PLLC<br>3100 Clarendon Blvd. Suite 920<br>P.O. Box 50606<br>Arlington, VA 22201 |
| SEMCO Energy Gas Company | Neil Levy<br>McDermott Will & Emery LLP<br>500 North Capitol Street, NW<br>Washington, DC 20001 |

| Party | Served On |
|---|---|
| Sequent Energy Management, L.P. | Gordon Smith<br>John & Hengerer<br>1629 K Street NW, Suite 402<br>Washington, DC 20006<br><br>Mark Christensen<br>Southern Company Gas<br>1200 Smith Street, Suite 900<br>Houston, Texas 77002<br><br>Jacques Hodges<br>1200 Smith Street, Suite 900<br>Houston, Texas 77002<br><br>Lori Shaw<br>Sequent Energy Management, LLC<br>One Williams Center<br>Tulsa, OK 74172 |
| Sequent Energy Management, LLC | Lori Shaw<br>Sequent Energy Management, LLC<br>One Williams Center<br>Tulsa, OK 74172 |
| Shell Energy North America (US), L.P. | Amy Gold<br>Shell Energy North America (US), L.P.<br>1000 Main St., Level 12<br>Houston, Texas 77002 |
| Southern Indiana Gas and Electric Company, d/b/a CenterPoint Energy | Heather Watts<br>CenterPoint Energy<br>211 N.W. Riverside Drive<br>Evansville, Indiana 47708 |

| Party | Served On |
|---|---|
| Southwest Energy, L.P. | Gordon Smith<br>John & Hengerer<br>1629 K Street NW, Suite 402<br>Washington, DC 20006<br><br>Darren Edwards<br>Southwest Energy, LP<br>3900 Essex Lane, Suite 610<br>Houston, Texas 77027 |
| Spire Missouri Inc. | David Abernathy<br>Spire Inc.<br>700 Market Street, 6th Floor<br>St. Louis, MO 63101<br><br>David Yonce<br>Spire<br>700 Market Street<br>St. Louis, MO 63101<br><br>Sreenivasa Rao Dandamudi<br>Director, Associate General Counsel<br>Spire Missouri, Inc.<br>700 Market Street, 6th Floor<br>St. Louis, MO 63101 |
| Steel Dynamics, Inc. | Damon Xenopoulos<br>Stone Mattheis Xenopoulos & Brew, PC<br>1025 Thomas Jefferson Street NW, 8th Floor<br>Washington, DC 20007 |
| Symmetry Energy Solutions, LLC | Donna Poresky<br>Symmetry Energy Solutions, LLC<br>1111 Louisiana Street, B-241<br>Houston, TX 77002 |

| Party | Served On |
|---|---|
| Tenaska Marketing Ventures | Gordon Smith<br>John & Hengerer<br>1629 K Street NW, Suite 402<br>Washington, DC 20006<br><br>Tomasz Lange<br>Tenaska Marketing Ventures<br>14302 FNB Parkway<br>Omaha, Nebraska 68154<br><br>Terry Jo Comes<br>14302 FNB Parkway<br>Omaha, Nebraska 68154 |
| Union Electric Company d/b/a Ameren Missouri | Brian Daschbach<br>Ameren<br>1901 Chouteau Avenue<br>St. Louis, MO 63103<br><br>Vonda Seckler<br>Ameren<br>PO Box 66149<br>St. Louis, MO 63166-6149<br><br>Tim Eggers<br>Ameren<br>1901 Chouteau Avenue<br>St. Louis, MO 63103<br><br>Jamie Simler<br>Ameren Services Company<br>1331 Pennsylvania Avenue, NW<br>Washington, DC 20004<br><br>C. Drew Cayton<br>FTI Consulting<br>11401 Lamar Avenue<br>Overland Park, KS 66211 |

| Party | Served On |
|---|---|
| United States Steel Corporation | Joseph Fagan<br>Day Pitney LLP<br>555 11th Street NW<br>Washington, DC 20004<br><br>Sophia Browning<br>Day Pitney LLP<br>555 11th Street NW<br>Washington, DC 20004<br><br>David A. Stoner<br>United States Steel Corporation<br>600 Grant Street, RM 2028<br>Pittsburgh, Pennsylvania 15219<br><br>Madison King<br>United States Steel Corporation<br>600 Grant Street, Suite 2014<br>Pittsburgh, Pennsylvania 15219<br><br>Carl Fink<br>Blue Planet Energy Law, LLC<br>628 SW Chestnut Street<br>Portland, Oregon 97219 |
| Vectren Energy Delivery of Ohio, Inc. | Heather Watts<br>CenterPoint Energy<br>211 N.W. Riverside Drive<br>Evansville, Indiana 47708 |

| Party | Served On |
|---|---|
| World Fuel Services, Inc. | Robert Fallon<br>Engelman Fallon, PLLC<br>1717 K Street, NW, Suite 900<br>Washington, DC 20006<br><br>Christina Switzer<br>Engelman Fallon, PLLC<br>823 Congress Ave., Suite 300-67<br>Austin, Texas 78701<br><br>Leonid A. Budyonny<br>World Fuel Services, Inc.<br>9800 NW 41st Street<br>Miami, Florida 33178 |
| XTO Energy, Inc. | Matthew Rusmussen<br>XTO Energy, Inc.<br>22777 Springwoods Village Parkway<br>Spring, Texas 77389<br><br>Chris Russo<br>XTO Energy, Inc.<br>22777 Springwoods Village Parkway<br>Spring, Texas 77389<br><br>Daniel Brink<br>800 Bell Street<br>CORP-EMB-3497O<br>Houston, TX 77002 |

# ATTACHMENT A – FERC ORDER

Order on Rehearing and Clarification, *Panhandle Eastern Pipe Line Company, LP*, 191 FERC ¶ 61,013 (April 4, 2025) (FERC Docket No. RP19-78-016)

191 FERC ¶ 61,013
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Mark C. Christie, Chairman;
                       Willie L. Phillips, David Rosner,
                       Lindsay S. See, and Judy W. Chang.

Panhandle Eastern Pipe Line Company, LP                 Docket No. RP19-78-016


ORDER ON REHEARING AND CLARIFICATION

(Issued April 4, 2025)

1.      On December 5, 2024, the Commission issued an order[1] rejecting Panhandle
Eastern Pipe Line Company, LP's (Panhandle) revised refund report filed in compliance
with the Commission's order[2] rejecting Panhandle's refund report and directing further
compliance (Second Refund Report), finding that it did not comply with directives set
forth in the Initial Refund Report Order.  On January 2, 2025, Constellation Energy
Generation, LLC (Constellation) filed a request for clarification of the Second Refund
Report Order.  On January 3, 2025, Panhandle filed a request for rehearing of the Second
Refund Report Order.

2.      Pursuant to *Allegheny Defense Project v. FERC*,[3] the rehearing request filed in this
proceeding may be deemed denied by operation of law.  However, as permitted by
section 19(a) of the Natural Gas Act (NGA),[4] we are modifying the discussion in the
Second Refund Report Order and continue to reach the same result in this proceeding, as

---

[1] *Panhandle E. Pipe Line Co., LP*, 189 FERC ¶ 61,170 (2024) (Second Refund
Report Order).

[2] *See Panhandle E. Pipe Line Co., LP*, 187 FERC ¶ 61,112 (Initial Refund Report
Order), *order on reh'g*, 188 FERC ¶ 61,162 (2024) (Initial Refund Report Rehearing
Order).

[3] 964 F.3d 1 (D.C. Cir. 2020) (en banc).

[4] 15 U.S.C. § 717r(a) ("Until the record in a proceeding shall have been filed in a
court of appeals, as provided in subsection (b), the Commission may at any time, upon
reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole
or in part, any finding or order made or issued by it under the provisions of this chapter.").

discussed below.[5]  We also grant in part, and dismiss in part, Constellation's request for clarification.

## I.    Background

3.      On August 30, 2019, Panhandle filed, pursuant to NGA section 4,[6] a rate case seeking to change its rates, among other things, effective October 1, 2019.[7]  On September 30, 2019, the Commission accepted and suspended the tariff records, effective March 1, 2020, subject to refund and established hearing procedures and a technical conference.[8]  On December 16, 2022, the Commission issued Opinion No. 885, which affirmed in part, and reversed in part, the Initial Decision[9] regarding Panhandle's rates and, as relevant here, directed Panhandle to submit a compliance filing and recalculate Panhandle's rates accordingly.[10]  On September 25, 2023, the Commission issued an order on rehearing and compliance[11] that directed Panhandle to provide refunds and a report to the Commission consistent with sections 154.501 and 154.502 of the Commission's regulations.[12]

---

[5] *Allegheny Def. Project*, 964 F.3d at 16-17.  The Commission is not changing the outcome of the Second Refund Report Order.  *See Smith Lake Improvement & Stakeholders Ass'n v. FERC*, 809 F.3d 55, 56-57 (D.C. Cir. 2015).

[6] 15 U.S.C. § 717c.

[7] Panhandle's 2019 NGA section 4 rate filing proceeding in Docket No. RP19-1523 was consolidated with two ongoing NGA section 5 proceedings regarding Panhandle's and Southwest Gas Storage Company's FERC Form No. 501-G filings in Docket Nos. RP19-78 and RP19-257.  *See* Initial Refund Report Order, 187 FERC ¶ 61,112 at P 2.

[8] *Panhandle E. Pipe Line Co., LP*, 168 FERC ¶ 61,208 (2019).

[9] *Panhandle E. Pipe Line Co., LP*, 174 FERC ¶ 63,026 (2021) (Initial Decision).

[10] *Panhandle E. Pipe Line Co., LP*, Opinion No. 885, 181 FERC ¶ 61,211 (2022), *order on reh'g*, Opinion No. 885-A, 184 FERC ¶ 61,181 (2023), *order on reh'g*, Opinion No. 885-B, 186 FERC ¶ 61,015 (2024).

[11] Opinion No. 885-A**,** 184 FERC ¶ 61,181 at P 29.

[12] 18 C.F.R. §§ 154.501, 154.502 (2024).

## A.    Initial Refund Report

4.      In its November 30, 2023 refund report (Initial Refund Report), Panhandle stated that it provided the required refunds to its shippers on November 17, 2023.[13]  Panhandle explained that it calculated refunds by comparing the subcomponents of the rates proposed in its NGA section 4 rate case (Proposed Section 4 Rates) relative to the rates Panhandle would have collected under the Commission-approved rates from Opinion No. 885 and Opinion No. 885-A (Opinion No. 885 Rates), subject to the refund floor of the rates in effect before the end of the suspension period on March 1, 2020 (Pre-Existing Lawful Rates).[14]  Panhandle's reservation and usage rates for transportation rate schedules include three subcomponents:  (1) Field Zone Transmission Charge; (2) Market Zone Access Charge; and (3) Market Zone Mileage Charge.[15]  Panhandle's firm storage rates include three charges:  (1) Deliverability; (2) Capacity; and (3) Injection/Withdrawal.[16]

## B.    Initial Refund Report Order

5.      On May 28, 2024, the Commission rejected Panhandle's Initial Refund Report and directed Panhandle to file a corrected refund report within 30 days of the date of the order.[17]  While the Commission found that Panhandle used the appropriate refund floor in

---

[13] Panhandle provided refund amounts totaling $206,229,861.96 (inclusive of interest).  Panhandle November 30, 2023 Initial Refund Report at 1.

[14] Initial Refund Report Order, 187 FERC ¶ 61,112 at P 4.

[15] Panhandle's usage rate also includes an Annual Charge Assessment Commodity Rate.  Panhandle's tariff includes the subcomponents for each reservation and usage rate. *See, e.g.*, Panhandle Eastern Pipe Line Company, LP, Fourth Revised Volume No. 1, Rate Schedule FT (Currently Effective Rates) (38.0.0) (listing the Field Zone Transmission Charge, the Market Zone Access Charge, and the Market Zone Mileage Charge (which applies to each 100 miles) to develop reservation and usage rates).

[16] Panhandle's Interruptible Storage Rates include an Inventory Charge and an Injection/Withdrawal Charge.  *See* Panhandle Eastern Pipe Line Company, LP, Fourth Revised Volume No. 1, Rate Schedule IIOS (Currently Effective Rates) (24.0.0); Panhandle Eastern Pipe Line Company, LP, Fourth Revised Volume No. 1, Rate Schedule IFS (Currently Effective Rates) (11.0.0).

[17] Initial Refund Report Order, 187 FERC ¶ 61,112 at P 1.  The Commission also directed Panhandle to issue additional refunds, with interest, within 30 days of the date of the order, as necessary.  The Commission authorized Panhandle to bill the shippers who received refunds in error with interest computed in accordance with section 154.501(d) of

calculating refunds, it nevertheless found that Panhandle did not use the appropriate method of calculating refunds because Panhandle separately calculated refunds for each subcomponent of its rates, instead of considering the subcomponents together as one filed rate.[18]  The Commission directed Panhandle to recalculate each customer's refunds on a contract-by-contract basis with the corrected interest amounts.[19]  For each contract, the Commission directed Panhandle to determine refunds based on a comparison of the Proposed Section 4 Rate revenues for each shipper's movement and the greater of Opinion No. 885 Rate revenues or the Pre-Existing Lawful Rate revenues for each movement, plus interest.[20]

### C.    Initial Refund Report Rehearing Order

6.    In the Initial Refund Report Rehearing Order, the Commission sustained its prior finding that Panhandle's method of separately calculating refunds for each subcomponent of its rates was inaccurate and contributed to Panhandle's miscalculations of the refunds.[21] The Commission stated that a pipeline must calculate refunds by using "the entirety of the revenues derived from a rate schedule," explaining that this means that subcomponents are considered together as one filed rate.[22]  Applying Commission precedent, the Commission reaffirmed its finding that Panhandle's "one filed rate" for its transportation rate schedules included all three subcomponents, because shippers cannot take service without paying for all the subcomponents.[23]

### D.    Second Refund Report

7.    On June 27, 2024, Panhandle filed the Second Refund Report.  Panhandle stated that it provided revised refunds for services provided between March 1, 2020, and September 30, 2023.  Panhandle also separately recalculated interest.  In response to an August 20, 2024 data request issued by Commission Staff (Second Data Request),

---

the Commission's regulations within 30 days of the date of the order.  *Id*.; 18 C.F.R. § 154.501(d).

[18] Initial Refund Report Order, 187 FERC ¶ 61,112 at PP 13, 16.

[19] *Id.* P 17.

[20] *Id.*

[21] Initial Refund Report Rehearing Order, 188 FERC ¶ 61,162 at P 12.

[22] *Id.* (quoting Initial Refund Report Order, 187 FERC ¶ 61,112 at P 16).

[23] *Id.*

Panhandle explained that it offset over-collections and "under-collections" on a total revenue from shipper basis because the shipper pays the total invoice amount that may contain multiple charges for multiple services and/or multiple contracts for such shipper.[24]

### E.     Second Refund Report Order

8.     In the Second Refund Report Order, the Commission found that Panhandle failed to comply with the Commission's directives in the Initial Refund Report Order.[25]  The Commission stated that, in the Second Refund Report workpapers, Panhandle appeared to bill customers both for refunds erroneously provided in the Initial Refund Report, but also for alleged "under-collections."[26]  The bill related to the alleged "under-collections" resulted from situations for each contract in which the revenues from the then-effective Proposed Section 4 Rates were less than the revenues Panhandle would have recovered from the proposed Opinion No. 885 Rates.[27]  The Commission found that Panhandle erred in assessing "under-collections," stating that the Commission merely directed Panhandle to bill shippers for refunds given in error under Panhandle's initial refund methodology in the Initial Refund Report and did not direct Panhandle to bill customers for "under-collections" during the refund period.[28]

---

[24] Panhandle August 27, 2024 Response to Second Data Request at 2, 6.  In other words, Panhandle assessed each contract separately.  For each contract, Panhandle determined (a) the revenues it collected under Panhandle's Proposed Section 4 Rates and (b) the revenues it would have collected under the Opinion No. 885 Rates had those rates been effective.  *Id.*  The Initial Refund Report Order required Panhandle to refund the additional revenues collected under each contract when the revenues from the Proposed Section 4 Rates exceeded the revenues that would have been collected from the Opinion No. 885 Rates.  However, in addition to providing those refunds as the Commission directed, Panhandle for the first time also sought to collect from shippers its "under-collections" for those contracts where revenues that would have been collected under the Opinion No. 885 Rates exceeded the Proposed Section 4 Rates.

[25] Second Refund Report Order, 189 FERC ¶ 61,170 at P 19 (citing Initial Refund Report Order, 187 FERC ¶ 61,112).

[26] *Id.* P 22 (citing Panhandle August 27, 2024 Response to Second Data Request at 2, 6).

[27] *Id.*

[28] *Id*. P 23 (citing Initial Refund Report Order, 187 FERC ¶ 61,112 at P 13).

Document Accession #: 20250404-3075          Filed Date: 04/04/2025

9.      Additionally, the Commission explained that it is only authorized to order refunds of that portion of a pipeline's proposed rate increase found improper.[29]  Specifically, the Commission explained that refunds are appropriately calculated based on Panhandle over-collecting from shippers during the refund period, before the Opinion No. 885 Rates were moved into effect.  The Commission explained that if the total revenues under the Proposed Section 4 Rates were below the total revenues calculated under the Pre-Existing Lawful Rates (the refund floor), customers were not entitled to refunds because they did not overpay for service to Panhandle.[30]  Similarly, if the total revenues from the Opinion No. 885 Rates were above the total revenues under the Proposed Section 4 Rates, the Commission stated that Panhandle is not entitled to recoup that difference.[31]

10.     Accordingly, the Commission rejected the Second Refund Report and directed Panhandle to file a corrected refund report within 30 days.[32]  The Commission also directed Panhandle to issue additional refunds, with interest, within 30 days of the date of that order.[33]

---

[29] *Id.* (citing 15 U.S.C. § 717c(e)).

[30] In Panhandle's response to the Second Data Request, Panhandle stated that another pipeline followed the approach of offsetting over-collections and under-collections on a total revenue from shipper basis.  Panhandle August 27, 2024 Response to Second Data Request at 2 (citing Kern River Gas Transmission Co., Docket No. RP04-274-000 (filed Apr. 27, 2010); Kern River Gas Transmission Co., Docket No. RP04-274-000 (filed Dec. 17, 2010)).  However, the Commission found that Panhandle did not explain, and it was not clear from the filings cited by Panhandle, that Kern River followed the same approach as Panhandle in its Second Refund Report.  Second Refund Report Order, 189 FERC ¶ 61,170 at P 23 n.45 (citing *Kern River Gas Transmission Co.*, Docket No. RP04-274-024 (Dec. 20, 2010) (delegated order); *Kern River Gas Transmission Co.*, Docket No. RP04-274-025 (Jan. 13, 2011) (delegated order)).  In any event, the Commission explained that under the NGA it may only order refunds of that portion of a pipeline's proposed rate increase found improper.  *Id.*

[32] Second Refund Report Order, 189 FERC ¶ 61,170 at P 24.

[33] *Id.*

F.    **Third Refund Report**

11.    On January 3, 2025, Panhandle filed a refund report (Third Refund Report) making adjustments consistent with the Second Refund Report Order.  Panhandle's Third Refund Report was accepted on January 23, 2025.[34]

II.    **Rehearing**

A.    **Panhandle's Rehearing Request of the Second Refund Report Order**

12.    On rehearing, Panhandle argues that the Commission erred in the Second Refund Report Order by rejecting Panhandle's "offset" of under-collections, in which it billed for under-collection from those shippers with contracts where revenues under Panhandle's Proposed Section 4 Rates were less than the revenues that would have been collected under the Opinion No. 885 Rates, and over-collections.[35]  Panhandle claims that its proposed offset reduces the refund amounts that were skewed as a result of the findings in the Initial Refund Report Order and Initial Refund Report Rehearing Order.[36]  Panhandle contends that the Commission erred in the Initial Refund Report Order and Initial Refund Report Rehearing Order by requiring Panhandle to calculate its refund considering all rate subcomponents together as one filed rate, rather than on an individual subcomponent basis.[37]

13.    Moreover, Panhandle argues that the Commission's rejection of the Second Refund Report violates NGA section 4(e), and is inconsistent with *Sunray*,[38] *Distrigas I*,[39] *Distrigas II*,[40] and *Kern River*.[41]

---

[34] *Panhandle E. Pipe Line Co., LP*, Docket No. RP19-78-017 (Jan. 23, 2025) (delegated order).

[35] Rehearing Request at 1-2.

[36] *Id.* at 6-7, 9.

[37] *Id.* at 1-2, 3-4, 5.

[38] *FPC v. Sunray DX Oil Co.*, 391 U.S. 9 (1968).

[39] *Distrigas of Mass. Corp. v. FERC*, 737 F.2d 1208, 1224 (1st Cir. 1984) (*Distrigas I*).

[40] *Distrigas of Mass. Corp. v. FERC*, 751 F.2d 20, 23 (1st Cir. 1984) (*Distrigas II*).

[41] Kern River Gas Transmission Co., Docket No. RP04-274-000 (filed Apr. 27,

## 1.  **NGA Section 4(e)**

14.    Panhandle alleges that the Commission violated NGA section 4(e) by requiring Panhandle to calculate refunds using "total revenues" under "one filed rate" in the Initial Refund Report Order and Initial Refund Report Rehearing Order.[42]  Panhandle argues this calculation results in higher refunds than calculated in its Initial Refund Report under the rate refund method that follows the express language of NGA section 4(e).[43] Panhandle contends that the Commission's rejection of its Second Refund Report is improper because Panhandle's proposed offset reduces the skewed refund amounts that result from the "total revenues" calculation under "one filed rate" that combines rate decrease revenues with rate increase revenues.[44]

15.    Further, Panhandle argues that the Initial Refund Report Order erred in directing Panhandle to utilize the "total revenues" under "one filed rate" as it is contrary to NGA section 4(e) that establishes the refund floor based on "rates."  Panhandle asserts that the Commission has no authority to unilaterally declare that "the refund floor shall apply to total revenues, not individual rate components."[45]

## 2.  *Sunray*

16.    Next, Panhandle argues that the Second Refund Report Order is inconsistent with the principles established in *Sunray* regarding the refund floor.[46]  Panhandle contends that in *Sunray*, the Court held that the rate approved in an order issuing a certificate to a producer established a "refund floor" because it would be "anomalous" for NGA section 4(e) to authorize a rate increase that would have a refund obligation leaving the

---

2010); Kern River Gas; Kern River Gas Transmission Co., Docket No. RP04-274-000 (filed Dec. 17, 2010)); *Kern River Gas Transmission Co*., 130 FERC ¶ 61,273, at P 3 (2010) (*Kern River*).

[42] Rehearing Request at 2, 5-7.

[43] *Id.* at 5, 7 (citing 15 U.S.C. § 717c(e)) ("Where increased rates or charges are thus made effective, the Commission may … require the natural-gas company … to refund, with interest, the portion of such increased rates or charges by its decision found not justified.").

[44] Rehearing Request at 7.

[45] *Id.* at 2 (quoting Initial Refund Report Order, 187 FERC ¶ 61,112 at P 17).

[46] *Id.* at 4, 7-10.

company with less revenue than if it had never filed a rate increase.[47]  Panhandle states that the United States Court of Appeals for the First Circuit (First Circuit) in *Distrigas I* described the refund floor principle of *Sunray* as preventing a situation where "a firm asking for an increase could end up considerably worse off than if it had not requested one."[48]  Panhandle contends that the Commission's "total revenues" method under the "one filed rate" approach adopted in the Initial Refund Report Order and Initial Refund Report Rehearing Order violates the refund floor principle of *Sunray* because it causes a pipeline filing an NGA section 4 rate case with both decreased tariff rates below the refund floor and increased tariff rates above the refund floor to be "considerably worse off" than if it had just filed to increase all tariff rates above the refund floor.[49]  Panhandle argues that if it is directed to calculate refunds as one filed rate, the amount between the Proposed Section 4 Rates (some of which were below the refund floor) and the Opinion No. 885 Rates will result in higher refunds than if Panhandle is permitted to segment its rates and limit its refunds to those charged amounts which exceed the higher of either the refund floor or the justified rate (here, the Opinion No. 885 Rates).[50]  Panhandle contends that under the Commission's approach pipeline customers unreasonably receive both the benefit of tariff rates decreased below the refund floor and an increase in refunds that is contrary to the express language of NGA section 4(e).[51]

### 3.   *Distrigas I* and *II*

17.    Panhandle further contends that rejection of its proposed offset is inconsistent with *Distrigas II*.[52]  Panhandle states that the Commission divided a 25-month "locked-in" rate period into three parts and ordered refunds for the second and third sub-periods where rates were above the refund floor but refused to offset that amount by the first sub-period where rates were below the refund floor.[53]  Panhandle states that in *Distrigas II*, the First Circuit reversed the Commission, stating that "the Commission cannot order a refund

---

[47] *Id.* at 7-8 (citing *Sunray*, 391 U.S. at 24).

[48] *Id.* at 8 (quoting *Distrigas I*, 737 F.2d at 1224).

[49] *Id.*

[50] *Id.* at 8-9.

[51] *Id.* at 9.

[52] *Id.* at 9-11.

[53] *Id.* at 9 (citing *Distrigas II*, 751 F.2d at 21).

larger in amount than the extra revenues collected"[54] and cannot create a method to calculate refunds that are "well in excess of the net amount that the rate 'increase' yielded the utility."[55] Panhandle claims that its Second Refund Report properly calculated refunds that reflect the "net amount" of the rate increase—refunds for revenues from rate increases above the refund floor decreased by revenues from rates decreased below the refund floor.[56] Panhandle states that, as required by *Distrigas II*, this approach avoids a refund that would be "well in excess of the net amount that the rate 'increase' yielded" Panhandle.[57] Moreover, Panhandle claims that the First Circuit in *Distrigas II* stated that the Commission's desire to increase the amount of a refund is not a basis for disregarding NGA section 4(e).[58]

18.     Panhandle claims that, without the offset, certain Panhandle customers unreasonably would receive both the benefit of tariff rates decreased below the refund floor and more refunds as a result of adding revenues from such decreased tariff rates into the calculation of refunds from the increased tariff rates than they would receive from simply a refund of the "portion" of the "increased" tariff rate above the preexisting tariff rate found not justified.[59] Panhandle claims that, as in *Distrigas II*, the Commission's desire to increase the amount of refunds is not a basis for disregarding NGA section 4(e) or rejecting an appropriate offset.[60]

### 4.     *Kern River*

19.     Finally, Panhandle states that the Commission's failure to allow the offsetting of under-collections and over-collections is inconsistent with *Kern River*.[61] Panhandle

---

[54] *Id.* (citing *Distrigas II*, 751 F.2d at 23).

[55] *Id.* at 10 (citing *Distrigas II*, 751 F.2d at 23).

[56] *Id.* (citing *Distrigas II*, 751 F.2d at 23).

[57] *Id.* (citing *Distrigas II*, 751 F.2d at 23).

[58] *Id.* (citing *Distrigas II*, 751 F.2d at 23 ("*Sunray* means that Boston Gas's, or [the Commission's], desire to increase the size of the refund *by itself* cannot justify the subdivision. And, without the 'larger refund' argument, [the Commission's] subdivision is left without any justification whatsoever")).

[59] *Id.* at 10-11.

[60] *Id.* at 11.

[61] *Id.* (citing *Kern River*, 130 FERC ¶ 61,273 at P 3).

alleges that the Commission erred in stating that "Panhandle does not explain, and it is not clear from the filings cited by Panhandle, that Kern River followed the same approach as Panhandle in its [Second Refund Report]."[62]  Panhandle states that in *Kern River*, the Commission permitted Kern River's use of offsets when making refunds.[63]

### B.     Commission Determination

20.     We are unpersuaded by Panhandle's request for rehearing of the Second Refund Report Order.  As an initial matter, because Panhandle's Second Refund Report failed to calculate the refunds in the manner directed by the Initial Refund Report Order and the Initial Refund Report Rehearing Order, we find that the Commission appropriately rejected the Second Refund Report.

21.     In the Initial Refund Report Order, the Commission directed Panhandle to recalculate refunds "[f]or each contract, … based on a comparison of the Proposed Section 4 Rate revenues for each shipper's movement and the greater of Opinion No. 885 Rate revenues or the Pre-Existing Lawful Rate revenues for each movement, plus interest."[64]  The Commission further directed, consistent with Commission policy, that the refund floor "apply to total revenues, not individual rate components," explaining that calculating refunds based on total revenues "aligns the total payments that each shipper made to Panhandle during the refund period with the rates determined in Opinion No. 885 when considering the limitations on refunds imposed by the refund floor."[65]  In the Second Refund Report Order, the Commission merely found that Panhandle failed to comply with the Initial Refund Report Order when Panhandle imposed an offset for alleged under-collections.  Panhandle does not contest the Commission's finding in the Second Refund Report Order that Panhandle failed to comply with the Initial Refund Report Order.

22.     To the extent Panhandle simply reiterates arguments opposing the Commission's policy to consider rate subcomponents together as "one filed rate," we continue to find those arguments unavailing for the reasons stated in the Initial Refund Report Order and

---

[62] *Id*. (citing Second Refund Report Order, 189 FERC ¶ 61,170 at P 23 n.45).

[63] *Id.*

[64] Initial Refund Report Order, 187 FERC ¶ 61,112 at P 17; *see also* Second Refund Report Order, 189 FERC ¶ 61,170 at P 20.

[65] Initial Refund Report Order, 187 FERC ¶ 61,112 at P 17.

Initial Refund Report Rehearing Order.[66]  Moreover, these arguments constitute an impermissible collateral attack on those orders.[67]

23.    On rehearing, Panhandle alleges that the Commission's rejection of the Second Refund Report—and in particular, its rejection of the offset of the "under-collections" with overcollections—is inconsistent with NGA section 4(e), *Sunray*, *Distrigas I* and *II*, and *Kern River*.  However, these arguments misconstrue the relevant standard for refunds and improperly attempt to recover impermissible amounts from shippers.

24.    Panhandle alleges that the Commission's rejection of Panhandle's proposal to offset its "under-collections" with "over-collections" contravenes the express language of NGA section 4(e), which Panhandle contends limits refunds to the difference between "the amount that the utility collected under its *increased rates* . . . and what it would have collected under its prior lawful rates."[68]  However, in the Second Refund Report Panhandle instead proposes to collect "under-collections" resulting from situations in which Panhandle's Proposed Section 4 Rates (the amounts Panhandle actually collected) were less than what it would have collected if its future rates (Opinion No. 885 Rates) were effective during that time—which they were not.[69]  In other words, Panhandle seeks

---

[66] Initial Refund Report Order, 187 FERC ¶ 61,112 at PP 13, 16-17; Initial Refund Report Rehearing Order, 188 FERC ¶ 61,162 at PP 12-20.

[67] A collateral attack is "[a]n attack on a judgment in a proceeding other than a direct appeal" and is generally prohibited.  *Louisville Gas & Elec. Co.*, 144 FERC ¶ 61,054, at P 12 (2013) (citing *Wall v. Kholi*, 562 U.S. 545, 552-553 (2011)); *see also Pac. Gas & Elec., Co. v. FERC*, 533 F.3d 820, 823 (D.C. Cir. 2008) (dismissing petition for review based on a complaint that "while cloaked in the guise of a challenge to the orders below, is in fact an impermissible collateral attack on a series of orders that FERC issued in 2003 and 2004.").  Panhandle's assertion that the Commission erred in requiring it to calculate refunds using total revenues under "one filed rate" is addressed to the determinations in the Initial Refund Report Order and Initial Refund Report Rehearing Order, *see* Rehearing Request at 2, 4, 6-7, which are no longer subject to rehearing.  *See, e.g.*,     *N.Y. Power Auth. v. FERC*, 109 F.4th 550, 559 (D.C. Cir. 2024) ("Parties must seek review of FERC orders within sixty days, and challenges to prior orders not raised within that timeframe are jurisdictionally barred."); *City of Oswego. v. FERC*, 97 F.3d 1490, 1494 (D.C. Cir. 1996) ("failure to seek timely rehearing of [an order] precludes [petitioner] from attacking the validity of [the order]").

[68] Rehearing Request at 5.

[69] *See* Panhandle August 27, 2024 Response to Second Data Request at 7; Second Refund Report Order, 189 FERC ¶ 61,170 at P 23 n.43 (explaining that the $1,951.70 billed amount indicated in the Response to Second Data Request reflects the difference

to offset refunds properly due to shippers with an artificial, unapproved "under-collection" that it was not entitled to recover.[70]  Specifically, Panhandle's proposal seeks to recover a rate that was not filed with the Commission at the time, contrary to the filed rate doctrine and the rule against retroactive ratemaking.[71]  Panhandle fails to explain how the language in NGA section 4(e) allows or permits its proposed offset.[72]

25.     Panhandle also alleges that the Commission's determination violates the refund floor principle in *Sunray* and *Distrigas I* and *II*, because it causes a pipeline filing an NGA section 4 rate case with both decreased tariff rates below the refund floor and increased tariff rates above the refund floor to be "considerably worse off" than if it had just filed to increase all tariff rates above the refund floor.[73]  As the Commission explained in the Initial Refund Report Rehearing Order, *Sunray* holds that the pre-existing lawful rate constitutes the refund floor because otherwise a firm proposing a rate increase could end up considerably worse off than if it had not requested one.[74] Similarly, in *Distrigas II,* the First Circuit stated that:

between total revenues under the Opinion No. 885 rates and the as-billed Proposed Section 4 Rates).

[70] *Infra P 26*.

[71] *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981) (the filed rate doctrine "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority"); *id.* at 578 ("Not only do the courts lack authority to impose a different rate than the one approved by the Commission, but the Commission itself has no power to alter a rate retroactively.").  *See also SFPP, L.P. v. FERC*, 967 F.3d 788, 801-02 (2020) (citing *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1227 (D.C. Cir. 2018) (quoting *Towns of Concord, Norwood, & Wellesley v. FERC*, 955 F.2d 67, 71 n.2 (D.C. Cir. 1992)) ("[T]he rule against retroactive ratemaking 'prohibits the Commission from adjusting current rates to make up for a utility's over-or under-collection in prior periods.'").

[72] 15 U.S.C. § 717c(e) ("Whenever any such new schedule is filed the Commission shall have authority … [to] suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months …. Where increased rates or charges are thus made effective, the Commission may … order [a] natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified.").

[73] Rehearing Request at 8 (citing *Sunray*, 391 U.S. at 24; *Distrigas I*, 737 F.2d at 1224; *Distrigas II*, 751 F.2d at 23).

[74] Initial Refund Report Rehearing Order, 188 FERC ¶ 61,162 at P 18.

> *Sunray* notes that § 4 proceedings focus only upon a utility's request for a rate increase. Since rate investigations often take a long time to complete, the statute compromises the interests of the utilities and its customers by automatically delaying the rate increase for one month, allowing the Commission to delay it for up to five more months, and then permitting the utility to put it into effect subject to the Commission's power (once the investigation is over) to insist that the utility refund any extra revenues collected. *Sunray* says that the Commission cannot order a refund larger in amount than the extra revenues collected—even if the investigation reveals that the past lawful rate was too high. Otherwise a firm asking for an increase could end up worse off than if it had not requested one. Section 4's language prevents the larger refund, and, in doing so, it is consistent with traditional rate-making principles, which typically limit the regulator's rate-setting power to prospective changes.[75]

26. Thus, the principle espoused in *Sunray*, as applied by *Distrigas I* and *II*, affirms that the last lawful rate becomes the refund floor and the Commission cannot direct refunds for the portion of increased rates to exceed the difference of that increased rate and the Pre-Existing Lawful Rate. This ensures that a pipeline seeking a rate increase will not have a refund obligation that would leave the pipeline with less revenue than if it had not filed a rate increase. Applying this principle to the present circumstances, Panhandle's refund obligation cannot exceed the difference between the Pre-Existing Lawful Rate (in effect before the end of the suspension period on March 1, 2020) and the Commission-approved Opinion No. 885 Rates. *Sunray* does not, however, address instances such as here: where the *pipeline itself* had proposed a rate decrease below the Pre-Existing Lawful Rate.[76] In other words, the Commission's actions did not put

---

[75] *Distrigas II,* 751 F.2d at 23 (citing Natural Gas Act, § 5, 15 U.S.C. § 717d; *Sunray*, 391 U.S. at 24; *Distrigas I*, 737 F.2d at 1224; *Mass. Dep't of Pub. Utils. v. United States*, 729 F.2d 886, 887 (1st Cir.1984) (listing similarly structured statutes)).

[76] For example, for Rate Schedule FT service, while long-haul shippers paying Panhandle's Proposed Section 4 Rates show a rate increase given the distance-based Market Zone Mileage Charge, for short-haul shippers, this rate actually went down compared to the Pre-Existing Lawful Rate. Thus, in some cases, the Proposed Section 4 Rates for short-haul shippers were actually decreased, whereas the long-haul shippers receiving service under Rate Schedule FT experienced a rate increase.

Panhandle in a "considerably worse off"[77] situation—Panhandle's own actions, by filing a rate decrease, resulted in this position.[78]  Moreover, as the Commission stated in the Initial Refund Report Rehearing Order, "[t]he cited precedent does not require that a firm be at least as well off as it would be if it had filed to increase all tariff rates across all rate subcomponents, but rather that a firm should not be made worse off than if it had never filed an NGA section 4 rate case."[79]  The Commission's rejection of the Second Refund Report is consistent with *Sunray* and *Distrigas I* and *II* because Panhandle is still protected by the refund floor, and those cases do not address the type of adjustment that Panhandle seeks here—to collect the difference between Panhandle's Proposed Section 4 Rates (the amounts Panhandle actually collected) and what it *would* have collected if its *future rates* (Opinion No. 885 Rates) were instead effective during that time (which they were not).[80]  Nor do we find that such a calculation is valid, given that Panhandle essentially seeks to recover a rate that was not filed with the Commission at the time.[81]

27.     Further, we are not persuaded by Panhandle's argument that prohibiting the offset of "under-collections" and over-collections is inconsistent with *Kern River*.  Although Panhandle contends that in *Kern River* "the Commission allowed Kern River's use of offsets when making refunds,"[82] the offsets discussed in that proceeding are not the same as those proposed by Panhandle in the present proceeding.  As explained in *Kern River,* Kern River filed a contested settlement and corresponding interim settlement rates, which would refund certain amounts it had collected in excess of the settlement rates to the

---

[77] *Distrigas I*, 737 F.2d at 1224.

[78] Moreover, where a shipper's rate under a particular service agreement increased due to the Proposed Section 4 Rates, the refund is not larger than the revenues collected from the rates associated with that service agreement.

[79] Initial Refund Report Rehearing Order, 188 FERC ¶ 61,162 at P 18.

[80] Regarding Panhandle claims that the Commission's "desire" to increase refunds is not a basis for denying the offset, the Commission's only objective is to ensure that Panhandle appropriately calculates the refunds due to shippers, consistent with the statute, precedent, and regulations.  *See* Rehearing Request at 10-11.

[81] For example, Panhandle seeks to recover the higher Opinion No. 885 Rates for the time period the Proposed Section 4 Rates were effective.  This amounts to recovering a higher rate than was filed with the Commission at the time, without proper notice to shippers for that time period.  *Supra* P 24.

[82] Rehearing Request at 11 (citing *Kern River*, 130 FERC ¶ 61,273 at P 3).

settling parties.[83]  In Opinion No. 486-B, the Commission rejected the contested settlement and corresponding interim settlement rates and directed Kern River to recapture the refunds made to settling parties under the settlement rates.[84]  In its Opinion No. 486-B compliance filing, Kern River gave the settling parties the option to defer its recapture of the refunds as an offset to that amount against future refunds Kern River may be obligated to pay upon the Commission's final determination in the proceeding.[85]  The Commission found this proposal was administratively efficient[86]—Kern River did not have to recapture unapproved refunds from parties to only turn around and give refunds, if any, to those same parties.[87]  In other words, Kern River was permitted to offset its recovery of refunds against potential future refunds due to shippers.  In contrast here, Panhandle seeks to offset refunds properly due to shippers with an artificial, unapproved "under-collection" that it was not entitled to recover under the rates it had filed with the Commission.[88]

## III.  **Clarification**

### 1.  **Constellation's Request for Clarification**

28.  Constellation seeks clarification that the Second Refund Report Order prohibits Panhandle from making any offset to refunds otherwise due under any Panhandle rate schedule to recoup an alleged under-collection between the Opinion No. 885 Rates and the Proposed Section 4 Rates filed by Panhandle.[89]  Constellation states that in the Initial Refund Report Order, Panhandle determined that Constellation was entitled to refunds totaling $912,908.19.[90]  However, Constellation states that in Panhandle's Second Refund Report, Panhandle recalculated Constellation's refund such that Constellation not only

---

[83] *Kern River*, 130 FERC ¶ 61,273 at P 3 (citing *Kern River Gas Transmission Co.*, Opinion No. 486-B, 126 FERC ¶ 61,034 (2009)).

[84] Opinion No. 486-B, 126 FERC ¶ 61,034 at P 192).

[85] *Kern River Gas Transmission Co.,* 127 FERC ¶ 61,033, at P 20 (2009).

[86] *Kern River*, 130 FERC ¶ 61,273 at P 3 (citing *Kern River Gas Transmission Co.*, 127 FERC ¶ 61,033 at P 20).

[87] *Kern River Gas Transmission Co.,* 127 FERC ¶ 61,033.

[88] Second Refund Report Order, 189 FERC ¶ 61,170 at PP 22-23.

[89] Constellation Request for Clarification at 1.

[90] *Id.* at 2.

owes Panhandle the initial refund amount back, but also owes Panhandle an additional $662,077.68.[91]  Constellation states that the elimination of Constellation's refund amount appears to be based on Panhandle's effort to recoup the difference between Opinion No. 885 Rates and the Proposed Section 4 Rates in situations where the Opinion No. 885 Rates were greater than the Proposed Section 4 Rates, and that this approach was rejected by the Commission in the Second Refund Report Order.[92]  Constellation seeks clarification that the adjustments made in the Second Refund Report may not be made by Panhandle in future refund reports.[93]

### 2.    Commission Determination on Request for Clarification

29.    As discussed above, we continue to find that Panhandle's Second Refund Report improperly calculated refunds and that the Commission did not direct Panhandle to recover "under-collections."[94]  Further, since the issuance of Panhandle's Second Refund Report, Panhandle has adjusted its calculations and resubmitted recalculation of refunds in a Third Refund Report, consistent with the Commission's directives.  Panhandle's Third Refund Report was accepted and no further adjustments are necessary to effectuate the findings in Opinion No. 885 and its progeny.[95]  Accordingly, we grant Constellation's requested clarification, in part, and confirm that the Second Refund Report order prohibits the type of adjustments Panhandle made in the Second Refund Report and dismiss its request, in part, as no future refund reports are due from Panhandle.

The Commission orders:

(A)    In response to Panhandle's request for rehearing, the Second Refund Report Order is hereby modified and the result sustained, as discussed in the body of this order.

---

[91] *Id.* at 2-3.

[92] *Id.*

[93] *Id.* at 3.

[94] *Supra* PP 20-27.

[95] *Panhandle E. Pipe Line Co., LP*, Docket No. RP19-78-017 (Jan. 23, 2025) (delegated order).

Document Accession #: 20250404-3075     Filed Date: 04/04/2025

(B)     Constellation's request for clarification is hereby granted, in part, and dismissed, in part, as discussed in the body of the order.

By the Commission.

( S E A L )

Debbie-Anne A. Reese,
Secretary.

Document Content(s)

RP19-78-016.docx......................................................1